UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BRENDA ANN MANSON

                          Plaintiff,

v.                                                              7:15-CV-0676
                                                                (GTS)
CAROLYN W. COLVIN
Acting Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP      PETER L. WALTON, ESQ.
  Counsel for Plaintiff
407 Sherman Street
Watertown, NY 13601-9990

U.S. SOCIAL SECURITY ADMIN.                     REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Brenda Ann Manson

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on January 16, 1969.  Plaintiff completed high school and one year of college, and has past work as a fast food worker and a pizza baker.  Generally, Plaintiff's alleged disability consists of pain on the left side of her face and neck, difficulty lifting her left arm, cholesterol issues, and headaches.

### B.    Procedural History

On December 2, 2010, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning November 20, 2009.  Plaintiff's application was initially denied on April 6, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On April 10, 2012, Plaintiff appeared in a video hearing before the ALJ, Marie D. Greener.  (T. 84-116.)  On May 15, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 171-89.)  On March 22, 2013, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings.  (T. 190-95.)

On August 22, 2013, Plaintiff appeared in a second video hearing before the ALJ.  (T. 117-60.)  On December 12, 2013, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act.  (T. 58-83.)  On April 11, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 63-76.)  First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2015, and has not engaged in substantial gainful activity since November 20, 2009, the alleged onset date.  (T. 63-64.)  Second, the ALJ found that Plaintiff's cervicalgia, myofacial pain syndrome (left side of neck and left shoulder), mild osteoarthritis and tendinitis (left shoulder), fibromyalgia, depression, and anxiety are severe impairments, but that Plaintiff's other impairments, including systematic lupus erythematous, panic disorder with agoraphobia, adjustment disorder, headaches, bilateral hand difficulty, and history of drug use, are not severe impairments.  (T. 64-66.)  Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (T. 66-68.)  The ALJ considered Listings 1.00 (musculoskeletal system impairments), 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety-related disorders).  (*Id.*)  Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except that she never can reach overhead with the left non-dominant arm, and only occasionally can lift, carry, push or pull, or operate machine controls with the non-dominant left arm.  Otherwise, she is able to handle, grasp, and perform fine manipulations, bilaterally.  The claimant additionally is limited to only occasional interaction with supervisors and co-workers, but can interact with the public on a frequent, but not constant, basis.

(T. 68-74.)  Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 74.)  Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T. 75-76.)

---

[1]     Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251 (1983).

**D.  The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff asserts four arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ failed to find that Plaintiff's lupus and migraines are severe impairments, and failed to consider the severity of Plaintiff's obesity.  (Dkt. No. 9, at 14-17 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ erred in evaluating the opinions of treating physician Leann Zielinski, D.O., and treating psychiatrist Thomas Keller, M.D., and failed to evaluate the opinion of treating therapist Debbie Simpson, Ph.D., altogether.  (*Id.* at 17-20.)  Third, Plaintiff argues that the ALJ erred in formulating the RFC because the ALJ (1) determined that Plaintiff can perform a range of light work without a function by function determination that she could perform the exertional requirements of the RFC, and (2) did not incorporate all of the limitations included in Dr. Magurno's opinion that she afforded great weight.  (*Id.* at 20-23.)  Fourth, and finally, Plaintiff argues that the ALJ erred in determining that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  (*Id.* at 23-25.)

Generally, Defendant asserts three arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the ALJ's step two determination was supported by substantial evidence.  (Dkt. No. 10, at 4-6 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ's RFC determination was supported by substantial evidence.  (*Id.* at 7-10.)  Third, and finally, Defendant argues that the ALJ's step five finding was supported by substantial evidence.  (*Id.* at 10-11.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983);  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

5

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.    Whether the ALJ's Erred in Evaluating the Severity of Plaintiff's Impairments

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 9, at 16 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," with examples including the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervisors, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Accordingly, the severity of an impairment is determined by the limitations imposed by the impairment, and not merely by diagnosis of the impairment. *Ellis v. Comm'r,* 11-CV-1205, 2012 WL 5464632, at *4 (N.D.N.Y. Sept. 7, 2012) (citing *Coleman v. Shalala,* 895 F. Supp 50, 53 [S.D.N.Y. 1995]); *see also McConnell v. Astrue,* 03-CV-0521, 2008 WL 833968 (N.D.N.Y. Mar. 27, 2008).

"The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases." *Davis v. Colvin*, 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 [2d Cir. 1995]). When an ALJ finds that one or more of a plaintiff's impairments are severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the five-step analysis and did not deny the claim based on lack of a severe impairment alone. *Ellis,* 2012 WL 5464632, at *5; *Tyron v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012); *Kemp v. Comm'r*, 10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

### i.    Obesity

Plaintiff argues that the ALJ erred by not considering whether Plaintiff's obesity was a severe impairment at step two. (Dkt. No. 9, at 16-17 [Pl.'s Mem. of Law].)

"Obesity is not in and of itself a disability." *Yablonski v. Comm'r of Soc. Sec.*, 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (citing *inter alia* SSR 02-1p, 2002 WL 34686281, at *4 [Sept. 12, 2002]). SSR 02-1p provides that, as with any other medical condition, the SSA "will find that obesity is a 'severe' impairment when, alone or in combination with other medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002

WL 34686281, at *4. For disability program purposes, "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment." *Id.*

Here, a review of Plaintiff's disability reports and hearing testimony indicates that she did not allege that her obesity was a disabling impairment or limited her ability to perform basic work activities. (T. 88, 123-24, 455, 484-88.) Although Plaintiff points to record evidence indicating her high body mass index ("BMI"), as noted above, this alone does not establish severity. (Dkt. No. 9, at 16-17 [Pl.'s Mem. of Law].) Moreover, no medical source opinion of record attributed any functional limitations to Plaintiff's obesity. (T. 679-83, 790-95.)

Notably, reviewing courts have held that an ALJ is not required to discuss a claimant's obesity in all cases. *Yablonski v. Comm'r of Soc. Sec.*, 03-CV-0414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008). The Court finds that the ALJ did not err by not discussing Plaintiff's obesity in this case because Plaintiff did not allege that her obesity was a disabling impairment and no medical opinion indicated that Plaintiff's obesity limited her ability to perform basic work activities. *See Younes v. Colvin*, 14-CV-0170, 2015 W. 1524417, at *4 (N.D.N.Y. Apr. 2, 2015) (finding that the ALJ did not err by not discussing the plaintiff's obesity where Plaintiff did not claim obesity as a disabling impairment and no medical source identified obesity as a contributing factor to her impairments); *Yablonski*, 2008 WL 2157129, at *6 (finding that, despite evidence of the plaintiff's obesity in the record, the ALJ did not err by not discussing the plaintiff's obesity where no medical source opined that the plaintiff's obesity affected her ability to perform basic work activities).

For these reasons, remand is not required on this basis. However, this should not be read to preclude the ALJ from assessing the severity of Plaintiff's obesity in light of any new evidence obtained upon remand.

### ii. Lupus

Turning to Plaintiff's argument regarding the severity of her lupus, a review of the entire decision indicates that the ALJ's step two finding that Plaintiff's lupus was not a severe impairment was supported by substantial evidence and the ALJ properly considered the effects of Plaintiff's lupus in the remainder of the sequential analysis.

At step two, the ALJ noted that examining rheumatologists, Ashwini Shadakshari, M.D., and Hom Neupane, M.D., assessed Plaintiff for SLE (systemic lupus erythematous) based on a prior diagnosis, but observed that Plaintiff's autoimmune laboratory testing for lupus was negative. (T. 64.) The ALJ further noted that the rheumatologists subsequently assessed Plaintiff with the alternative diagnosis of fibromyalgia to account for her pain and fatigue. (*Id.*) Therefore, the ALJ's determination that Plaintiff's lupus was not a severe impairment was supported by substantial evidence.

Moreover, the ALJ found that Plaintiff's cervicalgia, myofacial pain syndrome (left side of neck and left shoulder), mild osteoarthritis, and tendinitis (left shoulder), fibromyalgia, depression, and anxiety were severe impairments, and therefore the ALJ did not deny benefits based on lack of a severe impairment. (T. 64-66.) In any event, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010). *See also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Here, the ALJ properly considered the effects of Plaintiff's lupus in the remainder of her analysis. (T. 66-74.) For example, in formulating the RFC and assessing Plaintiff's credibility, the ALJ expressly discussed Plaintiff's lupus and her reported symptoms (including pain and fatigue), medical evidence concerning Plaintiff's resulting limitations, and included limitations in the RFC for Plaintiff's combined impairments. (T. 68-74.) Accordingly, even if the ALJ's failure to find Plaintiff's lupus severe at step two of the sequential analysis is error, it is harmless. *Ellis*, 2012 WL 5464632, at *5; *Tyron,* 2012 WL 398952, at *3.

Therefore, remand is not required on this basis. However, this should not be read to preclude the ALJ from reassessing the severity of Plaintiff's lupus in light of any new evidence obtained upon remand.

### iii.     Migraine Headaches

Next, the Court turns to Plaintiff's argument that the ALJ erred in finding that her migraines were not a severe impairment. At step two, the ALJ noted that consultative physical examiner Justine Magurno, M.D., diagnosed Plaintiff with headaches. (T. 65.) The ALJ further noted that Dr. Magurno indicated that Plaintiff reported daily headaches that came on if she extended her neck for any period, but that the headaches were relieved with Motrin and Vicodin. (*Id.*) The ALJ noted that Plaintiff also reported headaches to her primary care physician and was referred to neurologist Mohsin Ali, M.D., who diagnosed Plaintiff with chronic tension headaches and migraines, and prescribed Imitrex. (T. 66.)

In determining that Plaintiff's migraines were not a severe impairment, the ALJ stated that Plaintiff had no further follow up with neurologist Dr. Ali. (*Id.*) However Plaintiff notes that this is factually inaccurate because she was treated by Dr. Ali on numerous additional occasions following her initial visit on September 12, 2012. (Dkt. No. 9, at 16 [Pl.'s Mem. of

Law].)  Plaintiff's point is well taken.  A review of the record indicates that Plaintiff had nine

office visits with Dr. Ali from September 12, 2012 to May 16, 2014 for various impairments,

including headaches.  (T. 19-34, 967-72, 1070-76, 1136-37.)  Moreover, Dr. Ali's treatment

notes reported that Plaintiff had daily headaches with nausea, vomiting, lightheadedness,

dizziness, blurred vision, photophobia, and phonophobia; Plaintiff's treatment included

prescription mediation and nerve blocks for headaches; and an MRI examination of Plaintiff's

brain showed nonspecific white matter lesions.  (*Id.*)

As discussed below in Part III.B. of this Decision and Order, this matter is being

remanded for the ALJ to reassess the physical opinion evidence and Plaintiff's physical RFC.

Upon remand, the ALJ should first reassess the severity of Plaintiff's headaches based on the

complete record, including Dr. Ali's complete treatment records.  (T. 19-34, 967-72, 1070-76,

1136-37.)

**B.  Whether the ALJ Erred in Weighing the Medical Opinion Evidence in Determining Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the affirmative

in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 9, at 17-23 [Pl.'s

Mem. of Law].)  To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . .
> Ordinarily, RFC is the individual's maximum remaining ability to do
> sustained work activities in an ordinary work setting on a regular and
> continuing basis, and the RFC assessment must include a discussion
> of the individual's abilities on that basis.  A regular and continuing
> basis means 8 hours a day, for 5 days a week, or an equivalent work
> schedule.

*Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999).  "Work-related mental activities generally

required by competitive, remunerative work include the abilities to understand, carry out, and

remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as physicians' assistants, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing a medical opinion from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship with the plaintiff, including the length, nature, and extent of the treatment relationship, if applicable, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

First, the Court will consider the ALJ's assessment of the mental opinion evidence.  The record contains opinions of Plaintiff's mental abilities and limiations from the following four acceptable medical sources: (1) treating therapist Debbie Simpson, Ph.D., (2) treating psychiatrist Thomas Keller, M.D., (3) consultative psychiatric examiner Dennis Noia, Ph.D., and (4) State agency consultant Vigita Reddy, Ph.D.

### i.        Treating Therapist Dr. Simpson

On August 20, 2012, Dr. Simpson completed a medical source statement of Plaintiff's ability to perform work-related mental activities, and opined that Plaintiff had the following mental limitations since her first appointment on December 5, 2011.  (T. 1077-79.)  Dr. Simpson opined that Plaintiff had "extreme" limitation in interacting appropriately with supervisors and coworkers, and "marked" limitation in understanding, remembering, and carrying out complex instructions, making judgments on complex work-related decisions, and responding

appropriately to usual work situations and changes in a routine work setting.[2] (*Id.*) Dr. Simpson opined that Plaintiff had "moderate" limitation the ability to interact appropriately with the public and make judgments on simple work-related decisions, and "mild" limitation in the ability to understand, remember, and carry out simple instructions.[3] (*Id.*) Dr. Simpson stated that Plaintiff had difficulties with memory and concentration at times depending on her moods and level of irritability. (T. 1077.) Dr. Simpson further stated that Plaintiff had difficulty managing her anger, was easily irritated by others, and had problems at her past jobs. (T. 1078.)

The ALJ afforded some weight to Dr. Simpson's opinion based on her treating relationship with Plaintiff, but found that the record did not support any marked or extreme limitations. (T. 71.) Accordingly, Plaintiff's argument that the ALJ failed to evaluate Dr. Simpson's opinion is without merit.

### ii. Treating Psychiatrist Dr. Keller

On April 4, 2012, Dr. Keller completed a medical source statement of Plaintiff's ability to perform work-related mental activities, and opined that Plaintiff had the following mental limitations since November 2010. (T. 873-75.) Dr. Keller opined that Plaintiff had an "extreme" limitation in her ability to interact with supervisors and coworkers, and respond appropriately to usual work situations and changes in a routine work setting.[4] (T. 874.) Dr. Keller opined that Plaintiff had "marked" limitation in the ability to interact appropriately with

---

[2]    The assessment form stated that an "extreme" limitation is major limitation with no useful ability to function in the area, and "marked" limitation is serious limitation with a substantial loss in the ability to function effectively. (T. 1077.)

[3]    The assessment form stated that "moderate" limitation is more than a slight limitation, but the individual is still able to function satisfactorily; and "mild" limitation is slight limitation, but the individual can generally function well in the area. (T. 1077.)

[4]    The assessment form stated that an "extreme" limitation is major limitation with no useful ability to function in the area. (T. 873.)

the public, and "moderate" limitation in the ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions, and "mild" limitation in the ability to understand, remember, and carry out simple instructions, and make judgments on simple work-related decisions.[5] (T. 873.)  Dr. Keller stated that Plaintiff suffered from severe anxiety, was extremely self-conscious of her physical appearance, and had numbness in her right arm with limited mobility and use of that limb.  (T. 874.)

The ALJ afforded no weight to Dr. Keller's assessment regarding Plaintiff's physical limitation using her right arm, reasoning that it was outside of Dr. Keller's realm of care as a psychiatrist and indicated that Plaintiff had limitations using her *right* arm, when Plaintiff reported limitations with her *left* side.  (T. 70, 74.)  The ALJ afforded some weight to Dr. Keller's opinion of Plaintiff's mental limitations, reasoning that the length of Plaintiff's treatment with Dr. Keller was short, and Plaintiff reported that she found it difficult to communicate with Dr. Keller.  (T. 70.)  Moreover, the ALJ considered substantial medical evidence that was inconsistent with the highly restrictive mental opinion of Dr. Keller, including the mental opinions of Dr. Noia and Dr. Reddy discussed below.  (T. 64-74.)

### iii.    Consultative Psychiatric Examiner Dr. Noia

On March 17, 2011, Dr. Noia examined Plaintiff and provided an assessment of Plaintiff's work-related mental abilities and limitations.  (T. 675-78.)  Dr. Noia diagnosed Plaintiff with adjustment disorder with depressed mood, and opined that Plaintiff appeared to be having some difficulty dealing with stress.  (T. 678.)  Dr. Noia opined that Plaintiff appeared to

---

[5]    The assessment form stated that "marked" limitation is serious limitation with a substantial loss in the ability to function effectively; "moderate" limitation is more than a slight limitation, but the individual is still able to function satisfactorily; and "mild" limitation is slight limitation, but the individual can generally function well in the area.  (T. 873.)

be able to understand and follow simple instructions and directions, perform simple and some complex tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others.  (T. 677-78.)

The ALJ afforded great weight to Dr. Noia's opinion, reasoning that it was rendered after a thorough examination and is consistent with Plaintiff's reported abilities, including her activities of daily living.  (T. 69.)  For example, elsewhere in the decision the ALJ noted that Plaintiff reported that she had no difficulty dressing, bathing, grooming, or performing other personal care needs; reported that she cared for her mother and grandson and prepared daily meals; and denied needing assistance performing weekly shopping or performing indoor or outdoor chores.  (T. 67.)

### iv.    State Agency Consultant Dr. Reddy

On March 25, 2011, Dr. Reddy reviewed Plaintiff's medical records and provided an opinion of her mental abilities and limitations.  (T. 700-02.)  Dr. Reddy opined that Plaintiff could understand, carry out, and remember simple instructions; use appropriate judgment to make simple, work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with changes in a routine work setting.  (T. 702.)  In sum, Dr. Reddy opined that Plaintiff retained the capacity to perform at least unskilled, entry level work.  (*Id.*)

The ALJ afforded great weight and significant weight to Dr. Reddy's opinion, reasoning that it was rendered after a thorough review of the evidence of record and is consistent with the entirety of the objective medical evidence of record and Plaintiff's reported ability to perform significant daily activities.  (*Id.*)

The Court finds that the ALJ's mental RFC determination was supported by substantial evidence, including the opinions of Dr. Magurno and Dr. Reddy. An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e); *also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Moreover, in formulating a plaintiff's RFC, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a physician's opinion but not to another portion). Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Finally, as discussed above, the ALJ properly applied the regulations in evaluating the mental opinions of record by considering each source's professional credentials, examination or treatment relationship with Plaintiff (where applicable), and the consistency of the opinions with other evidence in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). (T. 64-74.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged the ALJ's failure to review each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). For these reasons, the Court finds that the ALJ properly assessed the mental opinion evidence of record and remand is not required on this basis.

Next, the Court turns to Plaintiff's argument that the ALJ erred in assessing the physical opinion evidence. The record contains opinions of Plaintiff's physical work-related limitations from the following two acceptable medical sources: (1) consultative physical examiner Justine Magurno, M.D., and (2) treating physician Leann Zielinski, D.O.

### i.     Consultative Physical Examiner Dr. Magurno

On March 17, 2011, Dr. Magurno examined Plaintiff and provided an assessment of Plaintiff's work-related physical abilities and limitations. (T. 679-83.) Dr. Magurno diagnosed Plaintiff with status post left carotid bypass, status post radiation and chemotherapy for childhood cancer (primary location submandibular), headaches, arthritis in the neck, atypical chest pain, and history of seizure verus ministroke. (T. 682-83.) Dr. Magurno opined that Plaintiff should avoid overhead use of her left upper extremity, and had "marked" limitation in neck motion especially extension as well as reaching, pushing and pulling on the left, lifting, and

carrying. (T. 683.) Dr. Magurno opined that Plaintiff had "moderate" limitation in bending and "no observed limitation" in walking, standing, sitting, fine motor skills, speech, hearing, or reaching, pulling, or pulling on the right. (*Id.*) The ALJ afforded great weight to Dr. Magurno's opinion based on the medical evidence of record and her programmatic expertise. (T. 69.)

### ii. Treating Physician Dr. Zielinski

On December 15, 2011, Dr. Zielinski opined that Plaintiff could occasionally and frequently lift and/or carry less than ten pounds, stand and/or walk less than two hours, and sit less than six hours in an eight-hour workday. (T. 790-93.) Dr. Zielinski opined that Plaintiff had limitation in performing pushing and pulling with the upper and lower extremities due to severe left shoulder impairment and left foot pain with immobility. (*Id.*) Dr. Zielinski further opined that Plaintiff had limitation in reaching, handling, fingering, and feeling; and could never perform climbing, balancing, kneeling, crouching, crawling, or stooping. (*Id.*) Dr. Zielinski opined that Plaintiff had limitation in hearing and could not tolerate loud noise due to damage to her left ear and cranial nerve, and carotid artery repair. (T. 792.) Finally, Dr. Zielinski opined that, due to allergies, Plaintiff had limitation in her ability to work in environments with temperature extremes, noise, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals and gases. (T. 793.)

The ALJ stated that she afforded no weight and little weight to Dr. Zielinski's opinion because it was inconsistent with the other evidence of record, including Dr. Zielinski's treatment notes. (T. 69-70.) However, in rejecting Dr. Zielinski's opinion, the ALJ failed to cite, and the record does not contain, a medical opinion to dispute Dr. Zielinski's opinion that Plaintiff could not perform the physical requirements of sedentary work. (*Id.*) Sedentary work requires the ability to lift or carry up to ten pounds in an eight-hour workday, however Dr. Zielinski opined

that Plaintiff could occasionally and frequently lift and/or carry *less than* ten pounds, and Dr. Magurno opined that Plaintiff had "marked" limitation in lifting and carrying.  (T. 683, 790-93), 20 C.F.R. §§ 404.1567(a), 416.927(a); SSR 83-10, 1983 WL 31251 (1983).

"The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999).  Moreover, an ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion").

Therefore, the Court need not address whether Dr. Zielinski's opinion bound the ALJ under the regulations due to the ALJ's aforementioned omission.  *See Balsamo*, 142 F.3d at 81 ("We need not address whether the treating physicians' opinions bound the ALJ under § 404.1527(d)(2) because in this case the Commissioner failed to offer and the ALJ did not cite *any* medical opinion to dispute the treating physicians' conclusion that . . . [the plaintiff] could not perform sedentary work.  In the absence of a medical opinion to support the ALJ's finding as to . . . [a plaintiff's] ability to perform sedentary work, it is well settled that 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion.'").

Turning to Plaintiff's argument that the ALJ failed to perform a function by function analysis in determining the RFC, the Second Circuit has held that an ALJ's failure to perform a function by function analysis of a plaintiff's abilities does not require remand where the ALJ's analysis of the plaintiff's functional limitations affords an adequate basis for meaningful judicial review, applies the correct legal standards, and is supported by substantial evidence.  *Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013).  However, here, the ALJ determined that Plaintiff

had the physical RFC to perform light work (with additional limitation) without an acceptable medical source opinion indicating that Plaintiff could perform all of the exertional requirements of light work, including lifting up to 20 pounds at a time, and frequently lifting or carrying up to ten pounds during an eight-hour workday. 20 C.F.R. §§ 404.1567(b), 416.927(b); SSR 83-10, 1983 WL 31251 (1983).

Therefore, the ALJ's RFC determination was not supported by substantial evidence because there was no acceptable medical source opinion indicating that Plaintiff could perform the physical requirements of the RFC. *See Balsamo*, 142 F.3d at 81-82 (finding that the ALJ's determination that the plaintiff could perform sedentary work was not supported by substantial evidence in the absence of a medical opinion indicating that the plaintiff could perform sedentary work)*; Larkin v. Colvin,* 13-CV-0567*,* 2014 WL 4146262, at *9 (N.D.N.Y. Aug. 19, 2014) (holding that remand was required where the record lacked a broad assessment of Plaintiff's physical functional limitations from an acceptable medical source); *House*, 2013 WL 422058 at *4 (holding that remand was required where there was no medical source opinion supporting the ALJ's RFC determination); *Santiago v. Colvin*, 10-CV-1510, 2016 WL 1049011, at *7 (N.D.N.Y. March 14, 2016).

The Court recognizes that, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *See House*, 2013 WL 422058, at *4. However, that is not the case in the present matter because the ALJ determined that Plaintiff's cervicalgia, myofacial pain syndrome (left side of neck and left shoulder), mild osteoarthritis and tendinitis (left shoulder), and fibromyalgia were severe impairments. (T. 64.)

For these reasons, remand is necessary for the ALJ to reassess the opinion of treating physician Dr. Zielinski and reevaluate Plaintiff's physical RFC. As appropriate, the ALJ may recontact Dr. Zielinski and/or Dr. Magurno for additional information to resolve any ambiguity or conflict in their opinions. Remand is also required for the ALJ to perform a new credibility analysis and make a new step five determination based on a proper evaluation of the physical opinion evidence and in light of any new medical evidence obtained. Therefore, the Court need not and will not reach Plaintiff's remaining argument set forth above in Part I.D. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: September 19, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge